FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 OCT 31 PM 4:06

U.S. DISTRICT COURT
N.D. OF ALABAMA

DAYTRON DAVIS,             }
                           }
     Plaintiff,            }
                           }      CIVIL ACTION NO.
v.                         }
                           }      02-AR-1753-S
CHECK EXCHANGE OF BESSEMER,}
LLC,                       }
                           }                  ENTERED
     Defendant.            }
                                              OCT 31 2002

## MEMORANDUM OPINION

There are many interesting questions that this court could address as it considers the motion of defendant, Check Exchange of Bessemer, LLC ("Check Exchange"), to compel the arbitration of the claims brought by plaintiff, Daytron Davis ("Davis"), in this case. The court will address some of them without trying to dress up its remarks with citations of authority that the prospective appellee can easily furnish.

Davis has convinced this court that the transaction upon which he bases his suit was, in fact, a short loan made to him by Check Exchange, but disguised as the sale of internet access, with a front-end so-called "rebate" of $250.00. The corporate name "Check Exchange" hardly sounds like a company that markets internet services, and that is not the business in which it was engaged in its dealings with Davis. Defendant was, in truth and fact, a loan company operating without a license. Davis has demanded a jury to try this already answered question, namely, whether the subject



transaction was a loan instead of the purchase of internet access. No jury is needed to provide an answer to a question that has such an obvious answer.

Davis has also convinced this court (and Check Exchange admits it) that Davis never signed the arbitration agreement that Check Exchange has here invoked. The written agreement was delivered to Davis as part of his illusory internet access package, along with his "rebate." The truth is that Davis neither sought nor needed internet services from Check Exchange. He did, however, want a $250.00 loan. Cutting through the subterfuge, a loan is what he got. Nevertheless, the loan was accompanied by the arbitration agreement. They were related. Ostensibly, he would not have gotten the loan without the arbitration agreement. There was consideration for the arbitration agreement, even if Davis did not read or understand it. Did it bind him to arbitrate all disputes he may have with Check Exchange? From the perspective of Davis, the unfortunate answer is "Yes."

Davis argues that Check Exchange's lending of money without a license vitiates the entire transaction, including the arbitration clause. He also challenges the language in the arbitration agreement by which he purports to concede that interstate commerce was affected. This raises the question of whether a transaction that, in actuality, does not implicate interstate commerce, can, by contract, be transformed into one that does. Such a written

2

concession is not dispositive, but it does tip the balance in a close case, and this is such a case. There was, after all, one internet terminal in Check Exchange's office.

Sadly, arbitration is the wave of the present. This panacea was dimly envisioned years ago when the Federal Arbitration Act ("FAA") was enacted. Only recently has it become a stampede away from the courthouse. The fact appearing in this case that another borrower (or "rebate" receiver) from Check Exchange has already engaged in the mandatory arbitration of his fraud claim against Check Exchange does not provide absolute proof that Check Exchange is entitled to mandatory arbitration of Davis's similar claim, but it does reflect the reach of arbitration clauses generally, and of this clause in particular.

As this court reads the reports from Alabama's appellate courts, and as this court has learned from its judicially acquired knowledge, more time and effort is spent by protagonists in trying to compel arbitration, and/or in resisting arbitration, and/or in attacking an arbitrator's award and/or in enforcing an arbitrator's award, than it would take to resolve their controversies by a trial on the merits. In the long run it may or may not cost less to arbitrate than to litigate. This court and other courts, state and federal, spend an inordinate amount of their time dealing with controversies similar to the one presented in this case. The law books are full of them. This court is becoming more weary with the

subject than wary of it.

No longer does the principle of unconscionability prevent a person from accidentally or unintentionally waiving his Seventh Amendment right to a jury trial and from blindly subjecting himself to binding arbitration. The receipt of a piece of paper that contains an arbitration agreement, together with some *quid pro quo*, is enough to preclude access to a court of law.

This particular arbitration agreement may not be as close to perfection as an accomplished draftsman could have made it, but the FAA does not require a perfect document. Neither does the unknown and unanticipated cost to Davis of pursuing arbitration stand in the way of establishing arbitration as his exclusive forum. As a practical matter, current jurisprudence, in the Eleventh Circuit, in the Supreme Court of the United States, and in the Supreme Court of Alabama, refrains from looking the "alternative dispute resolution" gift-horse in the mouth. Persons who engage in business transactions in this day and age must learn to expect the resolution of their potential disputes by arbitration or to expect no resolution at all. A lawyer's present day failure to include an arbitration clause in an employment agreement, a loan agreement, a purchase agreement, a franchise agreement, an insurance contract, a pension agreement, or any other agreement, may very well constitute malpractice.

One unanswered question is whether Alabama law as articulated

by the Supreme Court of Alabama, or federal law as articulated by the Eleventh Circuit and by the Supreme Court of the United States, informs this court on the scope of the FAA in particular cases. This, however, becomes an academic question in Alabama in light of the fact that the Supreme Court of Alabama has caught up with the federal courts in its adherence to, even enthusiasm for, the federal public policy that is represented by the FAA and that makes judges retire to become highly paid arbitrators.

    On the basis of the foregoing, this court will grant Check Exchange's motion to compel arbitration, but will stay the implementation of its order and will certify the question of binding arbitrability pursuant to 28 U.S.C. § 1292(b), if Davis requests such a certification within **seven (7) calendar days**. The order that accompanies this opinion probably constitutes an appealable order without a certification for interlocutory appeal, but the court wants to eliminate any doubt about it.

    DONE this 31st day of October, 2002.

                                             WILLIAM M. ACKER, JR.
                                             UNITED STATES DISTRICT JUDGE